# THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| JOHN DOES 192-217, | ) Case No. 2:21-cv-02527-MHW-EPD |
| | ) |
| Plaintiffs, | ) Judge Michael H. Watson |
| | ) |
| v. | ) Chief Magistrate Judge Elizabeth P. |
| | ) Deavers |
| THE OHIO STATE UNIVERSITY, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT THE OHIO STATE UNIVERSITY'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

**I.     INTRODUCTION.**

On September 22, 2021, the Court granted Ohio State's motions to dismiss in the *Garrett*, *Snyder-Hill*, *Ratliff*, and *Nutter* cases, finding that the two-year statute of limitations barred the claims of the plaintiffs in those cases. *See Garrett*, Case No. 2:18-cv-00692 (Doc. 197); *Snyder-Hill*, Case No. 2:18-cv-00736 (Doc. 158); *Ratliff*, Case No. 2:19-cv-04746 (Doc. 39); *Nutter*, Case No. 2:19-cv-02462 (Doc. 53) (collectively, "*Garrett et al.* Opinions"). The Court's reasoning in the *Garrett et al.* Opinions is dispositive of the statute of limitations issue here, and makes clear that the plaintiffs' claims in the above-captioned action also are time-barred and should be dismissed for the same reasons set forth in the *Garrett et al.* Opinions and below.

Plaintiffs state in their opposition brief that they "agree their causes of action are subject to a two-year statute of limitations[.]" Opp. at 7. Plaintiffs also concede that "many courts have dismissed" Title IX claims based on the two-year statute of limitations. *Id*. at 4. They are correct. A straightforward application of the standard principles governing claim accrual, as set out in the *Garrett et al*. Opinions, requires dismissal of plaintiffs' Title IX claims as barred by the statute of limitations.

In addition, plaintiff John Doe 195 does not dispute that he was not an Ohio State student at the time of the abuse, and that he never applied to or attended Ohio State as a student. He also cites no case in which a court has held that a potential athletic recruit such as himself has Title IX standing. His claims should be dismissed for the additional reason that he lacks standing.

## II. PLAINTIFFS' TITLE IX CLAIMS ARE BARRED BY THE TWO-YEAR STATUTE OF LIMITATIONS.

### A. Courts Routinely Dismiss Title IX Claims Based On The Statute Of Limitations.

Plaintiffs state they: (1) "agree their causes of action are subject to a two-year statute of limitations"; (2) admit that dismissal is warranted if "'the allegations in the complaint affirmatively show that the claim is time barred'"; and (3) acknowledge that "many courts have dismissed" Title IX claims based on the two-year statute of limitations. Opp. at 5, 7 (quoting *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012)). Despite the above concessions, plaintiffs quote *Cataldo* for the principle that it is "ordinarily inappropriate" to dismiss a claim based on the statute of limitations," and *In re Arctic Express, Inc.*, 636 F.3d 781 (6th Cir. 2011) to support their contention that "motions to dismiss on statute of limitations grounds are rarely granted." Opp. at 7-8.

Neither case assists plaintiff, however. *Cataldo* ***affirmed*** a Rule 12(b)(6) ***dismissal*** based on the applicable statute of limitations. *Cataldo*, 676 F.3d at 547. *In re Arctic Express* did ***not*** state that Rule 12(b)(6) motions are "rarely" granted and did ***not*** address a Rule 12(b)(6) motion to dismiss.

Consistent with plaintiffs' own concession that "many courts have dismissed" Title IX claims based on the statute of limitations, this Court found in the *Garrett et al*. Opinions that, "statute-of-limitations defenses may be properly raised in a Rule 12(b)(6) motion." *Garrett*,

2

Opinion (Doc. 197) ("*Garrett* Opinion") at 6-7; *Snyder-Hill*, Order (Doc. 158) at 2. This Court also cited numerous decisions in which courts have dismissed **Title IX** claims pursuant to Rule 12(b)(6) or Rule 12(c) because the pleadings, like plaintiffs' FAC here, affirmatively demonstrated that the Title IX claims were time-barred. *See Garrett* Opinion at 11-15. All apply here, and plaintiffs cannot avoid them.

        B.        <u>**The Discovery Rule Does Not Apply.**</u>

The discovery rule does not apply. As this Court stated in the *Garrett et al.* Opinions, "[t]here is good reason to think the Sixth Circuit might not adopt the discovery rule in Title IX cases" in light of *Rotkiske v. Klemm*, 140 S. Ct. 355 (2019). *Garrett* Opinion at 8. This Court, however, found it "need not definitively decide the issue either, though, as Plaintiffs' claim is untimely under both [the occurrence and discovery] rules." *Garrett* Opinion at 8, 10.

In support of their position that the discovery rule applies, plaintiffs state that Justice Scalia's characterization of the discovery rule as a "bad wine of recent vintage" was contained in Justice Scalia's "concurring opinion" in *Rotkiske v. Klemm*, 140 S. Ct. 355 (2019), and further assert that "this passage is not found in a majority opinion" and "represented the belief of one Justice." Opp. at 7. Contrary to plaintiffs' assertions, Justice Scalia's statement was quoted in the ***majority*** opinion in *Rotkiske*, which was authored by Justice Thomas, who was quoting Justice Scalia's concurring opinion in *TRW Inc. v. Andrews*, 534 U.S. 19 (2001). Seven other justices of the Supreme Court—Roberts, Breyer, Alito, Sotomayor, Kagan, Gorsuch, and Kavanaugh—joined in Justice Thomas' majority opinion in *Rotkiske*, for a total of ***eight out of nine justices*** agreeing that the discovery rule is a "bad wine of recent vintage." Justice Ginsburg authored the sole dissenting opinion. *Rotkiske*'s statement regarding the discovery rule is therefore not simply "Justice Scalia's musing," *see* Opp. at 7, but is ***binding law***.

3

Plaintiffs also state that *Rotkiske*'s rejection of the discovery rule was limited to federal statutes that expressly set the accrual of claims at the time a "violation occurs" (like the Fair Debt Collection Practices Act ("FDCPA") at issue in *Rotkiske*). Opp. at 8 n.2. Plaintiffs are wrong for at least four reasons:

(1) The *Rotkiske* Court gave no indication that its criticism of the discovery rule was confined to the FDCPA, and broadly characterized the discovery rule as a "bad wine of recent vintage." *Rotkiske*, 140 S. Ct. at 361.

(2) Plaintiffs do not dispute that neither the Supreme Court nor the Sixth Circuit has ever held that the discovery rule applies to claim accrual under Title IX. *See Forrester v. Clarenceville Sch. Dist.*, No. 20-12727, 2021 WL 1812700, at *4 (stating "[t]he Supreme Court has repeatedly refused to interpose the 'discovery rule' to accrual standards for federal claims. . . . The Supreme Court in *TRW Inc. v. Andrews* noted that while many federal courts 'apply a discovery accrual rule when a statute is silent on the issue,' the Court 'has not adopted that position as [its] own.'").

(3) Ohio's two-year personal injury statute of limitations, from which both Title IX and Section 1983 borrow, requires that an action be brought within a period of years after the cause of action "accrues." *See Everly v. Everly*, 958 F.3d 442, 460-461 (6th Cir. 2020) (quoting 17 U.S.C. § 507(b)); *Sykes v. United States*, 507 F. App'x 455, 462 (6th Cir. 2012); OHIO REV. CODE § 2305.10(A). The Supreme Court has "repeatedly said" that "the plain meaning of 'accrue' triggers the occurrence rule," in which the statute of limitations begins to run when a violation of the plaintiff's legal right has occurred, not later when the plaintiff "discovers" or should have discovered the cause of action. *See Everly*, 958 F.3d at 460, 462 (citing *Gabelli v. S.E.C.*, 568 U.S. 442, 448 (2013); *U.S. v. Lindsay*, 346 U.S. 568, 569 (1954); *Fisher v. Whiton*, 317 U.S. 217, 221 (1942)).

(4) Plaintiffs themselves concede that "the limitations period commences when the plaintiff has a complete and present cause of action." Opp. at 8 (quoting *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of California*, 522 U.S. 192, 201 (1997)). Contrary to plaintiffs' assertion, however, this is the "standard rule" for claim accrual, ***not*** the discovery rule.

**C.     Plaintiffs Pled They Were Aware Or Suspicious That The Claimed Acts Were Abusive At The Time They Occurred.**

Even applying the discovery rule, plaintiffs' Title IX claims are time-barred. As this Court found in the *Garrett et al.* Opinions, "Plaintiffs' claim is untimely under both [the occurrence and discovery] rules" because "the accrual date is the same under either rule"—when

4

each was last abused by Strauss, dropped out of Ohio State, or graduated. *Garrett* Opinion at 10-11, 15. Thus, the Court concluded that "Plaintiffs' Title IX claims are barred by the statute of limitations, even under the discovery rule." *Id.* at 15.

Plaintiffs here do not dispute the discovery rule principles set forth in the *Garrett et al.* Opinions or in Ohio State's motion to dismiss. *See Garrett* Opinion at 12-15; MTD (Doc. 15) at 12-13. Based on those principles, plaintiffs' argument that they "could not, and did not, know that Dr. Strauss assaulted them" until Perkins Coie issued its report in May 2019 is not plausible. Opp. at 2.

Plaintiffs' argument that "[t]he Court must accept as true Plaintiffs' allegations that they did not and were unable to understand that they were sexually assaulted" is without merit. *Id.* at 3. As this Court noted in its *Garrett et al.* Opinions, the Supreme Court's decisions in *Iqbal* and *Twombly* require plaintiffs to allege that the timeliness of their Title IX claims is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 678 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 570 (2009). Whether the plaintiffs have done so is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 550 U.S. at 679. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). The Court also "need not accept conclusory allegations or indulge in unreasonable inferences." *HMS Prop. Mgmt. Grp., Inc. v. Miller*, 69 F.3d 537, at *3 (6th Cir. 1995).

Here, it is impossible that plaintiffs' FAC allegations state timely Title IX claims. All 26 plaintiffs allege detailed and extensive facts regarding the abuse and harm they suffered. *See* MTD (Doc. 15) at 10-13. All plaintiffs allege that Strauss' conduct made them "feel very uncomfortable" and/or "uneasy." MTD (Doc. 15) at 10. Plaintiffs additionally allege Strauss'

conduct made them "feel very uncomfortable" and "uneasy"; they "perceived" "sexual undertones" during Strauss' examinations; "felt his exams were medically inappropriate," "overly aggressive," "wrong or overly invasive," and "extreme, embarrassing, and humiliating"; and plaintiffs "despised Strauss' medical exams" and "had strong negative emotions." *Id*. at 12. Twenty-four of the twenty-six plaintiffs also allege they believed Strauss was "trying to arouse" them. *Id*. *Id*. Plaintiffs further allege that Strauss' conduct and the conditions at Larkins Hall were so "rampant" and inappropriate that they were "widely known," and complaints about Strauss by students and student-athletes were "widespread." *Id*.

The above allegations demonstrate that a reasonable lay person would, ***at a minimum***, have been suspicious of possible abuse at the time it occurred, thereby triggering his duty to investigate and protect his rights.

Plaintiffs also rely upon Perkins Coie's statements in its report that "[p]atients often do not report sexual abuse committed by their doctors due to . . . confusion as to whether sexual abuse, in fact, occurred," and that Perkins Coie needed to "consult with suitably qualified medical experts" to "discern whether, and to what extent, Strauss' physical examinations of student-patients exceeded the boundaries of what was appropriate or medically necessary." Opp. at 3, 9. This Court rejected this same argument in the *Garrett et al.* Opinions, stating:

> The Complaint is replete with allegations that Plaintiffs were concerned by Strauss' abuse and felt violated by it, discussed the abuse with teammates, classmates, or family members, reported the abuse themselves, or that the abuse caused them immediate mental and emotional distress. All of these allegations directly undercut the notion that Plaintiffs were "not aware that Strauss's conduct was not medically necessary and that it was, in fact sexual assault" until the Perkins Coie report was published. Unfortunately, the very effect the abuse had on Plaintiffs (i.e., that it was enough to deprive them of the educational opportunities or benefits from Ohio State) was sufficient to put them on at least inquiry notice that they suffered abuse and that the abuse might not have happened but for Ohio State's deliberate indifference.

6

*Garrett* Opinion at 18-19 n.7 (citations omitted). This same reasoning applies to plaintiffs' complaint allegations here, which are similar to the allegations in the *Garrett et al*. cases. The Supreme Court additionally has advised that a plaintiff who is unsure (or, in the words of plaintiffs and Perkins Coie, has "confusion") about whether conduct by a government physician constitutes a tort against him:

> can protect himself by seeking advice in the medical and legal community. To excuse him from promptly doing so by postponing the accrual of his claim would undermine the purpose of the limitations statute, which is to require the reasonably diligent presentation of tort claims against the Government.

*United States v. Kubrick*, 444 U.S. 111, 123 (1979).

Plaintiffs' additional assertion that their claims could not have accrued at the time of the abuse because Ohio State itself had to hire Perkins Coie to "investigate the extent to which OSU knew about Strauss' conduct" further underscores why plaintiffs' claims are time-barred. *See* Opp. at 6. The challenge to the current Ohio State administration and the Perkins Coie investigators in attempting to reconstruct what happened decades ago highlights the primary purpose behind the statute of limitations bar. *See Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974) (statutes of limitations are "designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared"); *see also Gilley*, 572 F. App'x at 308 ("If the Board had been truly trying to conceal its knowledge from [plaintiff], ... it would not have conducted an investigation at all.")

Tellingly, plaintiffs do not cite any cases involving Title IX claims to support their position that they were unaware Strauss abused them at the time it occurred. Instead, they rely upon two non-Title IX, out-of-circuit cases. Both cases are inapposite. In neither case did any of the plaintiffs allege, as plaintiffs allege here, all of the following: detailed and specific facts

7

affirmatively demonstrating that plaintiffs believed their abuser's conduct was abusive and/or inappropriate at the time; widespread knowledge of the abuser's inappropriate conduct; widespread contemporaneous complaints about the abuser's conduct; and that the school's response or lack thereof to such knowledge and complaints was widely known. In addition to the above distinguishing facts:

> (1)  *Clarke v. Abate*, 2013 VT 52 (Vt. Sup. Ct. 2013) was a decision by the Vermont Supreme Court that: (i) unlike Title IX, involved a statute of limitations that expressly incorporated the discovery rule in its text; and (ii) applied Vermont discovery rule principles that were materially different from federal discovery rule principles (the court held that plaintiff's statements did not demonstrate "as a matter of law" her "knowledge" that "defendant's conduct was wrongful and not medically necessary," *id*. at ¶ 13). The District of Vermont subsequently distinguished and limited *Clarke* when it found that the law "does not require absolute knowledge" to trigger the accrual of the statute of limitations and that the plaintiff had "sufficient notice" of her injuries by the time she turned eighteen but failed to timely sue her abuser. *See Lewis v. Bellows Falls Congreg. of Jehovah's Witnesses*, 248 F. Supp. 3d 530, 545 (D. Vt. 2017).

> (2)  In *Doe v. Pasadena Hosp. Ass'n, Ltd*., No. 218CV08710ODWMAAX, 2020 WL 1244357 (C.D. Cal. Mar. 16, 2020), the court dismissed with prejudice the plaintiffs' sexual harassment claims based on the statute of limitations, stating that "Plaintiffs' argument that they could not have discovered [their gynecologist's] comments constituted sexual harassment is implausible and the discovery rule does not toll their sexual harassment claim" because "the alleged facts confirm that Plaintiffs should have suspected wrongdoing" where the gynecologist "made 'arousal-type' sounds" and sexual comments during examinations. *Id*. at *5.

### D. Plaintiffs Were Aware Of The Claimed Causal Connection Between The Alleged Abuse And Ohio State.

Plaintiffs assert that even if they were aware or suspicious that Strauss may have abused them, their Title IX claims did not accrue at the time of the abuse because "they had no way to know of Ohio State's alleged causal connection to his [sic] injuries until the Report was released and subsequent media coverage and consultations with attorneys." Opp. at 11. Again, plaintiffs are incorrect. This Court rejected the same argument in the *Garrett et al*. Opinions, stating:

> According to Plaintiffs, the "cause" here is Ohio State's deliberate indifference, so their claims did not accrue until they knew or should have known of their

> injuries and that those injuries were caused by Ohio State's deliberate indifference. . . . Plaintiffs' Title IX injury (deprivation of educational opportunities or benefits provided by Ohio State) was attributable to Strauss' abuse, and Plaintiffs knew both of the injury and its cause (the abuse), which was sufficient to put them at least on inquiry notice to determine whether injury would have occurred but for Ohio State's deliberate indifference. . . . Plaintiffs' argument that the statute of limitations did not begin to run until they learned of Ohio State's deliberate indifference via the Perkins Coie report is therefore incorrect as a matter of law.

*Garrett* Opinion at 16-19 (citations omitted). This Court also stated:

> Plaintiffs' argument that they had no reason to know of Ohio State's deliberate indifference until the announcement in 2018 of its internal investigation is also defeated by the factual allegations in their own Complaint. For example, Plaintiffs allege that Strauss's behavior was an open secret, that athletes would openly "joke" about his abuse, and that rumors of his abuse permeated Ohio State. Plaintiffs also knew that Strauss continued to be employed at Ohio State despite this widespread knowledge, which was enough to put them on inquiry notice of Ohio State's deliberate indifference to his horrific and predatory behavior.

*Garrett* Opinion at 19 n.8 (citations omitted). Plaintiffs here have made similar allegations, and their causation argument should be rejected for the same reasons set out in this Court's *Garrett et al.* Opinions.

Plaintiffs do not dispute that, in the cases cited in Ohio State's motion to dismiss, the ruling courts expressly rejected the same arguments plaintiffs make here—that accrual of their Title IX claims had been delayed because the plaintiffs alleged they lacked information about the schools' roles in not preventing the claimed abuse or because the schools concealed it from plaintiffs. *See* MTD (Doc. 15) at 17-18. In fact, dismissal is even more appropriate in *this* case because plaintiffs here—in contrast to plaintiffs in those other cases—allege widespread knowledge of the abuser's inappropriate conduct; widespread contemporaneous complaints about the conduct; and that the school's alleged indifference to such knowledge and complaints was widely known.

Given the well-established and consistent Title IX jurisprudence, it is not surprising that

9

plaintiffs found no Title IX cases supporting their position. The cases plaintiffs do cite involve the same operative facts and the same university, Baylor University, and a single case involving the University of Idaho which relied on the *Baylor* cases. *See* Opp. at 11-12, 14. The *Baylor* and *Univ. of Idaho* cases actually support Ohio State's position that plaintiffs' claims are time-barred. The *Baylor* and *Univ. of Idaho* cases held that the Title IX claims alleging the schools were deliberately indifferent to plaintiffs' complaints of sexual assault (the "post-reporting" claims) were **barred** by the respective two-year statutes of limitations. *See Doe 1 v. Baylor Univ.*, 240 F. Supp. 3d 646, 663-664 (W.D. Tex. 2017); *Lozano v. Baylor Univ.*, 408 F. Supp. 3d 861, 877, n.3 & n. 5 (W.D. Tex. 2019); *Hernandez v. Baylor Univ.*, 274 F. Supp. 3d 602, 617-618 (W.D. Tex. 2017); *Jameson v. Univ. of Idaho*, 2019 WL 5606828, at *4 (D. Idaho Oct. 30, 2019).

In regard to the courts' refusal to dismiss the Title IX claims alleging that the schools' conduct increased plaintiffs' risks of being sexually assaulted (the so-called "heightened-risk" claims), this Court found in its *Garrett et al.* Opinions that: "Ohio State is correct that Plaintiffs have not cited any case law suggesting the Sixth Circuit recognizes a 'heightened risk' theory of Title IX deliberate indifference." *Garrett* Opinion at 22. This Court also stated that "[e]ven if the Sixth Circuit recognizes a heightened risk theory of liability under Title IX, Plaintiffs' claims in this case are barred by the statute of limitations" because the underlying sexual abuse in the *Baylor* and *Univ. of Idaho* cases was student-on-student—not employee-on-student:

> In cases where the heightened-risk claim is based on a university's deliberate indifference to prior complaints of student-on-student harassment, it makes sense that a plaintiff may have no reason to suspect the school's knowledge of, and deliberate indifference to, prior complaints until a subsequent investigation, admission, or news report breaks.
>
> Here, however, the perpetrator was an employee of Ohio State. Not only that, but plaintiffs' complaints makes clear that Strauss's abuse was widely known amongst both students and faculty. This general knowledge is enough to have put Plaintiffs on notice that Ohio State may have receive complaints about Strauss in

the past and yet continued employing him. Accordingly, even if the Sixth Circuit recognizes a heightened risk theory of liability, Plaintiffs' claims are time-barred.

*Garrett* Opinion at 23.

This Courts' reasoning in the *Garrett et al*. Opinions is consistent with the Fifth Circuit, which subsequently abrogated the *Baylor* decisions in holding: "We have never recognized or adopted a Title IX theory of liability based on a general 'heightened risk' of sex discrimination, and we decline to do so." *Poloceno v. Dallas Indep. Sch. Dist.*, No. 20-10098, 2020 WL 5494511, at *3 (5th Cir. Sept. 10, 2020). Consistent with this Court's *Garrett et al*. Opinions, *Poloceno* also distinguished other courts' recognition of Title IX "heightened risk" claims on the ground that such courts "limit this theory of liability to contexts in which students committed sexual assault on other students, circumstances not present here." *Id*.

As this Court and *Poloceno* make clear, it was critical that the underlying sexual abuse in the *Baylor* and *Univ. of Idaho* cases was student-on-student—not employee-on-student. Had the abuse been employee-on-student, as plaintiffs allege here, even the judge deciding the *Baylor* cases expressly acknowledged he would have held the claims were time-barred:

> The Fifth Circuit [in *King-White*] concluded that the plaintiffs' Title IX claims accrued by the time the victim turned 18 because, even though the plaintiffs (the victim and her mother) did not know until later about certain school policies and prior complaints from other parents about the teacher, they knew the teacher was employed by the school, knew of the abuse, and knew the school had failed to stop the abuse—which, at the least, would have led a reasonable person to investigate further.
>
> Here, however, Plaintiff was sexually assaulted by another student. Unlike the plaintiffs in *King-White*, where the abuser was a school employee, Plaintiff therefore had no reason to suspect that Baylor's alleged deliberate indifference played a role in her assault.

*Hernandez*, 274 F.Supp.3d at 617 (citing *King-White v. Humble Ind. Sch. Dist.*, 803 F.3d 754, 762-763 (5th Cir. 2015)).

The above reasoning also is consistent with the numerous Title IX cases cited in Ohio

11

State's motion to dismiss holding that the statute of limitations accrues at the time of the abuse when a plaintiff is aware of the claimed acts, the abuser's identity, and that the abuser was an employee of the school. *See* MTD (Doc. 15) at 18-19.

Additionally, unlike the plaintiffs in *Baylor* and *Univ. of Idaho* who had "no reason" to know of or investigate the universities' conduct in creating the heightened risk of student-on-student sexual abuse until it was exposed by media coverage and/or the release of an independent investigation, *see Doe 1*, 240 F. Supp. 3d at 663 and *Univ. of Idaho*, 2019 WL 5606828, at *8, plaintiffs here expressly allege widespread knowledge of Strauss' inappropriate conduct and of Ohio State's inadequate response to it.

The three additional district court cases plaintiffs cite did not involve Title IX claims; were decided by courts outside the Sixth Circuit; pre-date *Rotkiske*; are distinguishable; and have been criticized. *See* Opp. at 12 (citing *See Doe v. Bd. of Educ. of Hononegah Cmty. High Sch. Dist.*, No. 207, 833 F. Supp. 1366 (N.D. Ill. 1993); *Sowers v. Bradford Area Sch. Dist.*, 694 F. Supp. 125 (W.D. Pa. 1988); *Armstrong v. Lamy*, 938 F. Supp. 1018 (D. Mass. 1996)). In none of the three cases did the plaintiffs allege, as plaintiffs allege here, widespread knowledge of the abuser's inappropriate conduct and of the school's inadequate response to it. In *Doe v. USC*, the court criticized *Hononegah*, which relied upon *Sowers*, *see* 833 F. Supp. at 1376 n.9, and was cited in *Armstrong*, *see* 938 F.Supp. at 1033. *See Doe v. USC*, 2019 WL 4229750, at *4 n.2. (stating "the Court finds [*Hononegah*] to be poorly reasoned by failing to focus on the plaintiff's knowledge of her *injury* resulting from the alleged constitutional violation, which was the alleged abuse by the teacher employed by the defendant. . . . Plaintiff's awareness of her injury at the time of her examination is sufficient for the statute of limitations period to run following the examination.").

### E. Fraudulent-Concealment Tolling Does Not Apply.

Plaintiffs' argument that fraudulent-concealment tolling of the statute of limitations applies is contained in a single sentence of their opposition brief: "Plaintiffs have alleged such facts, and the Report proves them." Opp. at 14.[1] The Court should deem the issue waived or forfeited. *See Libertarian Party of Ohio v. Husted*, 2015 WL 11120519, at *4 (S.D. Ohio 2015).

In addition, as this Court found in its *Garrett et al.* Opinions, fraudulent-concealment tolling did not apply because:

> As explained above, Plaintiffs were aware of all the elements of their cause of action by the late 1990s. That is, they knew of the injury, the identity of the perpetrator, and the perpetrator's employer. Because Plaintiffs have known for decades about the elements of their cause of action, any alleged misrepresentation or concealment by Ohio State did not prevent them from investigating or pursuing their claims.

*Garrett* Opinion at 20-21 (citations omitted).

The above reasoning is consistent with Supreme Court, Sixth Circuit, and Ohio case law holding, "[i]t is well established . . . that when a limitations period is tolled because of fraudulent concealment of facts, the tolling ceases when those facts are, or should have been, discovered by the plaintiff." *Credit Suisse Securities (USA) LLC v. Simmonds*, 566 U.S. 221, 226–27 (2012); *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 475 (6th Cir. 2013) ("The right to rely upon fraudulent concealment 'never continues beyond the time that a plaintiff, by exercising reasonable diligence, should have discovered the facts at issue.") (quoting *Zemcik v. LaPine Truck Sales & Equip. Co.*, 706 N.E.2d 860, 865 (Ohio Ct. App. 1998)). As explained above, plaintiffs knew or reasonably should have known of their injuries at the time of the abuse. Hence, plaintiffs' fraudulent concealment theory fails for the same reasons their discovery rule allegations do.

---

[1] Plaintiffs do not assert fraudulent concealment as an independent cause of action.

The FAC's allegations of fraudulent concealment also fail for the additional reason that they are coextensive with the substantive wrongs supporting plaintiffs' Title IX claims. Fraudulent concealment requires "efforts by the defendant, above and beyond the wrongdoing upon which the plaintiff's claim is founded, to prevent, by fraud or deception, the plaintiff from suing in time." *Cheatom v. Quicken Loans*, 587 F. App'x 276, 281 (6th Cir. 2014). In addition, "[f]raudulent concealment requires a showing of affirmative concealment; mere silence or unwillingness to divulge wrongful activities is not sufficient. Instead, there must be some trick or contrivance intended to exclude suspicion and prevent inquiry." *Precious Creation, Inc. v. Mercantile Bank Mortg. Co*., LLC, 731 F. App'x 498, 501 (6th Cir. 2018); *see also Schubert v. Neyer*, 165 N.E.2d 226, 229 (Ohio Ct. App. 1959).

Here, plaintiffs' fraudulent concealment allegations are the same allegations supporting plaintiffs' Title IX claims that Ohio State's was deliberately indifferent to the abuse and failed to act. *See* Opp. at 16 ("OSU failed to report the abuse to anyone, failed to discipline Strauss, failed to inform any of the students and continually concealed its knowledge of Dr. Strauss' sexual assaults in the examination room."). These allegations are insufficient to support fraudulent-concealment tolling. *Precious Creation, id.*; *Schubert*, *id*; *see also King-White*, 803 F.3d at 764 (rejecting fraudulent-concealment tolling because the "[p]laintiff's allegations focus[ed] on" the defendants' "failure to act").

Numerous courts have refused to apply fraudulent-concealment tolling to Title IX claims.[2] Given this law, it is not surprising that plaintiffs do not cite a single case in which a

---

[2] *See Gilley*, 572 F. App'x at 308-309 (Board's failure to report the alleged abuse to governmental authorities did not constitute fraudulent concealment of plaintiff's Title IX claims where plaintiff was aware of facts that "should have aroused her suspicion that she was being sexually abused"); *Forrester*, 2021 WL 1812700, at *7-10 ("Fraudulent concealment is a limited doctrine, and it does not apply to this case."); *Anderson v. Fayette Cty*., 616 F. Supp. 2d at 671 (similar); *Doe v. USC*, 2019 WL 4228371 at *5 (finding that "even if USC attempted to conceal Dr. Tyndall's improper behavior for years following Plaintiff's examination," the plaintiff's "own allegations show[ed] that she independently had reason to believe that Dr. Tyndall did not conduct the examination . . . according to accepted

14

court has tolled the statute of limitations on a Title IX claim (or even Section 1983 claim) based on fraudulent concealment. Fraudulent-concealment tolling of the statute of limitations does not apply.

### III. PLAINTIFF JOHN DOE 195 LACKS STANDING.

Plaintiff John Doe 195 does not dispute that: (i) he was not an Ohio State student at the time of the alleged abuse; and (ii) he never applied to or attended Ohio State as a student. Opp. at 16-17.

John Doe 195 cites **no case** in which a court has expanded Title IX standing to include potential athletic recruits such as himself. Just last year, this Court rejected a plaintiff's request to expand Title IX protections to non-students. *See Arocho v. Ohio Univ.*, 469 F. Supp. 3d 795, 797, 800-801 (S.D. Ohio 2020) (Watson, J.) (observing that courts "have concluded that non-students may not bring Title IX claims"; finding that "Plaintiff has not alleged that 'she was a student at an educational institution receiving federal funds'—specifically, that she was a student at Ohio University—and thus was entitled to the protection of Title IX for the allegations she makes here"). It should do so again here.

In *Arocho*, this Court relied upon cases holding that potential students and/or athletic recruits like plaintiff John Doe 195 lacked Title IX standing. *See id*. at 800 (citing *K. T. v. Culver-Stockton Coll.*, No. 4:16-CV-165 CAS, 2016 WL 4243965, at *5-7 (E.D. Mo. Aug. 11, 2016), *aff'd*, 865 F.3d 1054 (8th Cir. 2017) (potential recruit for college's women's soccer team who was sexually assaulted while on the college's campus lacked standing to assert Title IX

---

medical standards."); *Doe v. Pasadena Hospital*, 2020 WL 1529313, at *1, 3-4 (agreeing with Hospital's argument that "fraudulent concealment d[id] not toll Plaintiff's claims" that doctor had "misrepresent[ed] that his conduct was for a legitimate medical purpose and/or conformed to accepted medical practice" because the complaint established "actual or presumptive knowledge" of her claims); *Twersky v. Yeshiva Univ.*, 579 F. App'x 7, 11 (2d Cir. 2014) (finding fraudulent concealment tolling did not apply to Title IX claims); *King-White*, 803 F.3d at 764–65 (same); *Radin v. Albert Einstein Coll. of Med. of Yeshiva Univ.*, No. 04 CIV. 704 (RPP), 2005 WL 1214281, at *19 (S.D.N.Y. May 20, 2005) (same).

15

claims against the college); *Arora v. Daniels*, No. 3:17-CV-134, 2018 WL 1597705, at *8 (W.D.N.C. Apr. 2, 2018) ("potential student" who "did not attend, was not an applicant for, and did not receive federal educational benefits" from defendant college lacked Title IX standing)).

Consistent with *Arocho*, the Sixth Circuit confirmed in *Doe v. Univ. of Ky.*, 971 F.3d 553 (6th Cir. 2020) that Title IX standing exists only where "the individual is essentially ***a student*** of that university." *Id*. at 559 n.4 (emphasis added). This Court has stated that *Doe v. Univ. of Ky.* "does not amount to a significant change in law[.]" *Arocho v. Ohio Univ.*, 2020 WL 6949098, at *3 (S.D. Ohio Oct. 28, 2020) (Watson, J.) (denying motion for reconsideration).

John Doe 195 does not allege or argue that any of the special facts and circumstances in *Doe v. Univ. of Ky.* are present here. They are not. John Doe 195 does not dispute that he "visited" Ohio State's campus as a high school student. *See* Opp. at 17. That does not confer Title IX standing.

Additionally, none of the authorities cited in John Doe 195's opposition brief supports his position that he has Title IX standing, as discussed below:

> (1) In *Doe v. Brown Univ.*, 896 F.3d 127 (1st Cir. 2018), the First Circuit affirmed the district court's grant of judgment on the pleadings to Brown University, holding that a student enrolled at Providence College who was assaulted at Brown University could ***not*** bring a Title IX claim against Brown.[3] *Id*. at 132-133.[4]

> (2) This Court actually cited *Armstrong v. James Madison Univ.*, No. 5:16-CV-00053, 2017 WL 2390234 (W.D. Va. Feb. 23, 2017), *report and recommendation adopted*, 2017 WL 2399338 (W.D. Va. June 1, 2017), to ***support*** its holding in *Arocho*

---

[3] Plaintiffs incorrectly state that *Doe v. Brown* was decided by the Second Circuit. *See* Opp. at 16-17.

[4] To the extent plaintiff contends that a footnote in *Doe v. Brown* contains statements from the court arguably suggesting that Title IX protections apply to non-students who avail themselves of university "services," such statements: (1) are obiter dictum given the First Circuit's judgment in favor of the university; (2) conflict with the First Circuit's own requirement, as an element of a Title IX damages claim, that the plaintiff be a "student," *see Frazier v. Fairhaven School Committee*, 276 F.3d 52, 66 (1st Cir. 2002); (3) conflate "services" with an "education program or activity," *see* 20 U.S.C. § 1681(a); *Doe v. Mercy Cath. Med. Ctr.*, 850 F.3d 545, 555 (3d Cir. 2017) (emphasizing the need to "delimit" and place a "boundary" on Title IX because otherwise, "creative minds could conceivably read the word 'education' in Title IX to "encompass every experience of life") (citations and internal quotation marks omitted); and (4) are not binding upon this Court.

that the plaintiff *lacked* Title IX standing. *Arocho*, 469 F.Supp.3d at 801 (citing *Armstrong*).

(3)   In *Simpson v. Univ. of Colo. Boulder*, 500 F.3d 1170 (10th Cir. 2007), the Tenth Circuit suggested that non-students *lacked* Title IX standing in stating that a victim of a sexual assault at the University of Colorado at Boulder ("CU") "was not a CU student protected by Title IX[.]" *Id*. at 1181.

John Doe 195 argues that the cases refusing to extend Title IX standing to non-students are distinguishable on the purported basis that such cases involved "student-on-student assaults (known as *Davis*-claims) which impose a stricter, inapplicable, standard." Opp. at 18. John Doe 195 cites no authority, however, that different Title IX standing applies to student-on-*student*, rather than employee-on-*student*, assaults. In both instances, the plaintiff must be a *student*.

John Doe 195's attempt to distinguish between "*Davis*-claims" and other Title IX claims is further undercut by court decisions, including this Court's ruling in *Arocho*, that do not allow non-students to bring Title IX claims arising from sexual or discriminatory conduct by school employees.[5] John Doe 195 has not cited a single case—involving a *Davis*-claim or otherwise—in which a court has expanded Title IX standing to include potential athletic recruits like himself. This Court should decline to do so as well.

## IV.   CONCLUSION.

Given plaintiffs' detailed FAC allegations, all meant to establish the sexual abuse and harm they endured, it is not plausible for their counsel to now advise the Court that plaintiffs did not know of their own circumstances and dealings with Strauss. This Court should review those allegations, applying its own "judicial experience and common sense" as required by *Iqbal* and

---

[5] *See also Frazier*, 276 F.3d at 65 (requiring, as an element of a Title IX claim alleging sexual assault by a faculty member or school administrator, that the plaintiff be a student); *Yan Yan v. Pennsylvania State Univ.*, No. 4:14-CV-01373, 2015 WL 3953205, at *13 (M.D. Pa. June 29, 2015) (former student lacked standing to assert Title IX claims arising from alleged discrimination by university employees), *aff'd*, 623 F. App'x 581 (3d Cir. 2015); *Colombo v. Bd. of Educ. for the Clifton Sch. Dist.*, Nos. 11-CV-785, 12-CV-7132, 2016 WL 6471013, at *7 (D.N.J. Oct. 31, 2016) (parent who was sexually harassed by school principal during meetings at her child's school lacked Title IX standing).

*Twombly*, and hold that plaintiffs' Title IX claims are time-barred consistent with its opinions in *Garrett*, Case No. 2:18-cv-00692 (Doc. 197); *Snyder-Hill*, Case No. 2:18-cv-00736 (Doc. 158); *Ratliff*, Case No. 2:19-cv-04746 (Doc. 39); and *Nutter*, Case No. 2:19-cv-02462 (Doc. 53). For the reasons stated above, plaintiffs' FAC (Doc. 14) should be dismissed with prejudice.

Respectfully submitted,

DAVID A. YOST
ATTORNEY GENERAL OF OHIO

By: /s/ Michael H. Carpenter
Michael H. Carpenter (0015733) (Trial Attorney)
Timothy R. Bricker (0061872)
David J. Barthel (0079307)
CARPENTER LIPPS AND LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, OH 43215
E-mail: carpenter@carpenterlipps.com
bricker@carpenterlipps.com
barthel@carpenterlipps.com

Special Counsel for Defendant
The Ohio State University

**CERTIFICATE OF SERVICE**

    I certify that a copy of the foregoing was filed electronically on September 27, 2021. Notice was sent by operation of the Court's electronic filing system to all other counsel who have entered an appearance and any parties who have entered an appearance through counsel. The parties may access this filing through the Court's ECF system.

                    /s/ Michael H. Carpenter
                      Trial Attorney for
                      Defendant The Ohio State University